**UNITED STATES of America,**
**Intervenor, Appellant,**

v.

**SEABOARD MACHINERY CORPORA-**
**TION, Appellee.**

**No. 17238.**

United States Court of Appeals
Fifth Circuit.

Oct. 14, 1959.

Rehearing Denied Nov. 25, 1959.

Simpson, District Judge, dissented.

Wilfred C. Varn, U. S. Atty., Talla-hassee, Fla., Morton Hollander, William A. Klein, Dept. of Justice, Washington, D. C., George Cochran Doub, Asst. Atty. Gen., for appellant.

Leo L. Foster, Millard F. Caldwell, Tallahassee, Fla., Bert B. Rand, Washington, D. C., Caldwell, Parker, Foster, Madigan, Oven & Moriarty, Tallahassee, Fla., Charles M. Trammell, Hans A. Nathan, Washington, D. C., for appellee.

Before RIVES, Chief Judge, TUTTLE, Circuit Judge, and SIMPSON, District Judge.

TUTTLE, Circuit Judge.

On December 14, 1951 Seaboard Machinery Corporation and the United States entered into a contract under which the United States leased to Seaboard specified equipment to be used at the shipyard of Seaboard in its plant at

Panama City, Florida. This contract was denominated an "Equipment Lease." It provided for an annual rental payment of $9,074.79, later increased by $421.75 per year for additional equipment.

Included in the terms of the Equipment Lease was the following:

"9. The Hirer covenants and agrees to use the said machines in a careful and prudent manner during the term hereof, to keep and maintain the same in a good state of condition and repair, to replace and/or repair any and all damage thereto to the extent that upon the termination of this lease all of said machines shall be returned to the owner in as good condition as when the Hirer received the same saving only ordinary wear and tear, that is, deterioration resulting from normal use."

During an extension of the lease, on December 22, 1952, the shipyard and a substantial portion of its contents were destroyed by fire. It must be taken on this record that such destruction was without fault or negligence on Seaboard's part.

Seaboard had obtained three "special floater policies" which insured Seaboard (and only Seaboard) against loss including fire, of three specific lots of property. One of these policies, No. SFP33771, in the face amount of $100,000 covered movable equipment owned by Seaboard, another, No. SFP33777, in the face amount of $97,008.30 covered movable equipment owned by the United States and leased to Seaboard through General Services Administration. The third policy, No. SFP33799, in the face amount of $68,-374.80 covered equipment which was owned by the United States and leased to Seaboard through the Maritime Administration. This was the property whose loss gives rise to this litigation. It was in face amount equal to the original acquisition cost of the equipment to the United States.

Seaboard filed suit against the insurance company on the three policies. The United States Government intervened as a claimant to part of the proceeds expected to be recovered by Seaboard from the insurance company. A settlement was worked out between Seaboard and the insurance company, under the terms of which Seaboard was to receive $150,-000 on all three policies. Since the admitted loss under policy No. SFP33799 was $67,488.30, this amount of the total settlement was placed in escrow with a Tallahassee bank to protect the insurance company against any claim to all or part of this sum by the United States, acting through the Maritime Administration. Seaboard's suit against the insurance company was then dismissed, leaving the litigation pending between Seaboard and the United States.

In the claim filed by the United States it was asserted that under the provisions of Paragraph 9, quoted above, and Paragraph 10,[1] Seaboard became absolutely liable to respond to the Government upon its failure to replace the burned equipment. It was on this issue as to the meaning of these provisions of the contract that the case was tried by the district court after both parties filed affidavits suporting their respective motions for summary judgment. Both affidavits undertook to state the view of the respective affiants as to the meaning of these terms. There was thus before the court only the problem of construing the language of the written contract.

In a memorandum opinion the trial court examined the provisions in question, compared them with the bailment contract before this Court in R.F.C. v. Peterson Bros., 5 Cir., 160 F.2d 124, and

---

1. Paragraph 10 is as follows:

"10. The Hirer covenants and agrees to indemnify and save harmless the Owner from and against any and all claims, suits, actions, damages, penalties, judgments, trespasses, omissions, and any and all causes of action of whatsoever nature during the term hereof arising directly or indirectly out of or because of or on account of this lease, including personal injury, loss of life, loss of or damage to property, both real and personal, or any other matter, thing, or cause in connection with this lease."

concluded that the obligation of Seaboard was merely that of an ordinary bailee for hire and was not enlarged by the requirements of Paragraph 9 that Seaboard "replace and/or repair any and all damage" to the leased property.

A careful consideration of the differences between the bailment agreement before the Court in the Peterson case and that which is before us here for construction, constrains us to disagree with the decision of the trial court. Because of our views on this requirement of the contract it is not necessary for us to discuss the further contention of the Government that Seaboard's insuring of the leased property was at least to some extent for the benefit of the United States, and that Seaboard held the proceeds in trust for the Maritime Commission.

The language in the Peterson Bros. case, which it was contended created an absolute liability on the part of a bailee to make good for the loss or destruction of leased equipment where there was no negligence or other fault on the part of the bailee, is as follows:

"On the termination of the rental term of any items of the Equipment, Contractor will return the same in as good condition as when delivered at the job site, usual and ordinary wear and tear excepted." 160 F.2d 124, 125.

It will quickly be noticed that the language in the present Equipment Lease is quite different. Here Seaboard obligated itself not only to return the equipment to the owner in as good condition as when it received the same, saving only ordinary wear and tear, but it stated this in terms which make it unmistakably clear that it assumed the responsibility of making good any loss or damage to the equipment. It provided not only that "the Hirer covenants and agrees to use the said machines in a careful and prudent manner during the term thereof," which would have been sufficient to state the common law liability of a bailee, but it further agreed:

"to keep and maintain the same in a good state of condition and repair."

And then furthermore, which is most significant:

"to replace and/or repair any and all damage thereto *to the extent that* upon the termination of this lease all of said machines shall be returned to the Owner in as good condition as when the Hirer received the same, saving only ordinary wear and tear." (Emphasis added.)

The provision went even further, significantly adding a description of ordinary wear and tear as:

"that is deterioration resulting from normal use."

■ We think it quite clear that general contract law, to the extent that it can be distilled from the federal decisions, is the proper law to apply rather than the law of any particular state. It does not appear that any different rule would be applicable and appellee does not here argue for a rule of law as to any particular jurisdiction. In Priebe & Sons, Inc. v. United States, 332 U.S. 407, 411, 68 S.Ct. 123, 125, 92 L.Ed. 32, the Court stated:

"It is customary, where Congress has not adopted a different standard, to apply to the construction of government contracts the principles of general contract law."

In Sun Printing & Publishing Ass'n v. Moore, 183 U.S. 642, 22 S.Ct. 240, 242, 46 L.Ed. 366, the United States Supreme Court had for consideration a contract of bailment under the terms of which one party had leased a yacht for use in connection with newspaper coverage of the Spanish-American War. The yacht was destroyed without negligence of the lessee. Under a contract, some of the terms of which follow:

"The hirer will * * * keep said yacht in repair and * * * will surrender said yacht with all its gear, furniture, and tackle, at the expiration of this contract to the owner * * * in as good condition as at the start, fair wear and tear from reasonable and proper use only excepted," and

"The hirer shall be liable and responsible for any and all loss . * * to hull, machinery, equipment, tackle, spars, furniture, or the like," and again

"The hirer during the continuance of this agreement shall at all times, and at his own cost and expense, keep the said yacht, its hull, machinery, tackle, spars, furniture, gears, boats, and the like, in repair."

the Court stated:

"It is elementary that, generally speaking, the hirer in a simple contract of bailment is not responsible for the failure to return the thing hired, when it has been lost or destroyed without his fault. Such is the universal principle."

The Court then stated, however:

"but it is equally true that where by a contract of bailment the hirer has, either expressly or by fair implication, assumed the absolute obligation to return, even although the thing hired has been lost or destroyed without his fault, the contract embracing such liability is controlling, and must be enforced according to its terms,"

citing Sturm v. Boker, 150 U.S. 312, 14 S.Ct. 99, and Dermott v. Jones, 2 Wall. 1, 17 L.Ed. 762.

Considering the language of the contract above quoted, the Court then said:

"Pausing for a moment to consider the foregoing stipulations, it is difficult to conceive how language could more aptly express the absolute obligation, not only to repair and keep in good order to the end of the hiring and to return, but, moreover, to be responsible for any and all loss and damage to the vessel, her fixtures and appointments. These stipulations seem to us to leave no doubt of the absolute liability to return; in other words, of the putting of the risk of damage or loss of the vessel upon the hirer." 183 U.S. 642, 656, 22 S.Ct. 240, 246.

Other cases relating to the enlargement of the liability of a bailee by agreement are collected in Am.Jur. Bailments, § 183, pp. 30 et seq., and in 8 C.J.S. Bailments § 26d, pp. 267 et seq.

■ It is clear that the language used in the contract before the Court in the Peterson Bros. case, supra, was simply a restatement of the common law liability of a bailee for hire. It is equally clear that the language in the Equipment Lease before us is intended to enlarge that liability. As is so cogently stated in Sun Printing & Publishing Ass'n v. Moore, supra, the Courts must give effect to such intent when clearly manifested in the agreement.

■ We conclude that the Equipment Lease obligated Seaboard to stand responsible for the leased machinery or its value in the event of its destruction by fire. Seaboard, having an insurable interest, could, as it did, protect itself completely against loss in such eventuality by taking insurance to the full value of the rented equipment. It is only required now to pay over to the Government the proceeds of such insurance.

The judgment is reversed and the cause remanded for the entry of judgment in favor of the United States for the amount of insurance funds held in escrow.

SIMPSON, District Judge (dissenting).

Despite my strong respect for the views of the majority, I reach an opposite view as to the meaning of the language of the critical Paragraph 9 of the Equipment Lease. I read that language as simply expressing the caretaker obligation of an ordinary bailee, to maintain and repair the leased equipment and to return it to the bailor in good condition at the end of the bailment.

It is by no means unusual for Government lawyers in phrasing contracts (or any other documents) to use many words where a few would suffice. This, it seems to me, is all that occurred here. The obligation under Paragraph 9, reduced to

its essence and stripped of its excess verbiage, I view as precisely the obligation undertaken by the bailment contract before this Court in R.F.C. v. Peterson Bros., 5 Cir., 160 F.2d 124.

The fact that the bailee, Seaboard, for its own benefit, insured its own interest in the leased equipment, and collected the proceeds of this insurance, is completely extraneous to a determination of Seaboard's contractual obligation. The suit, as framed, was not a dispute over proceeds of the insurance policy; it was an attempt to construe the contractual liability as that of an insurer, one of absolute liability, regardless of fault. Such liability is neither expressed nor fairly implied by the language under scrutiny.

I would affirm the District Judge's holding that under the Peterson case, Paragraph 9 "merely sets expressly out what a common law bailment implies, and does not add anything to it." 160 F.2d at page 126.

With deference, therefore, I dissent.

Rehearing denied; SIMPSON, District Judge, dissenting.