985 F.2d 553
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
BRASWELL SERVICES GROUP INCORPORATED, formerly known as
Braswell Shipyards, Incorporated, Plaintiff-Appellant,
v.
UNITED STATES OF AMERICA, Defendant-Appellee.
 No. 92-1030.
 United States Court of Appeals,
Fourth Circuit.
 Argued: October 29, 1992
Decided: February 4, 1993
 
 Appeal from the United States District Court for the District of South Carolina, at Charleston. David C. Norton, District Judge. (CA-90-1911-2-18)
 Henry Pickett Wall, Sr., HAYNSWORTH, MARION, MCKAY & GUERARD, Columbia, South Carolina, for Appellant.
 William Thomas Storz, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.
 H. Bowen Woodruff, HAYNSWORTH, MARION, MCKAY & GUERARD, Columbia, South Carolina, for Appellant. Stuart M. Gerson, Assistant Attorney General, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; E. Bart Daniel, United States Attorney, John H. Douglas, Assistant United States Attorney, Columbia, South Carolina, for Appellee.
 D.S.C.
 AFFIRMED.
 Before WIDENER and LUTTIG, Circuit Judges, and DOUMAR, United States District Judge for the Eastern District of Virginia, sitting by designation.
 LUTTIG, Circuit Judge:
 
 OPINION
 
 1
 Plaintiff-appellant Braswell Services Group, which had been awarded a contract by the defendant-appellee United States to repair certain vessels, alleges that the district court erred in affirming an order of summary judgment entered by the Armed Services Board of Contract Appeals in favor of the United States on Braswell's action to recover under the contract the costs it incurred retrieving the vessels, which had drifted away from Braswell's shipyard aboard the work barge upon which Braswell had mounted them. Braswell also alleges the district court erred in finding for the United States on Braswell's alternative salvage theory of recovery, which it had not raised before the Board and apparently brought under the district court's admiralty jurisdiction. Finding no error, we affirm.
 
 I.
 
 2
 In July of 1989, the United States awarded Braswell, which is engaged in the business of ship repair and conversion, a contract to repair three Liberian Coast Guard vessels. Braswell drydocked the vessels on a work barge moored at its shipyard in Charleston, South Carolina. In September of 1989, Hurricane Hugo struck, loosed the barge from its moorings, and drove it into a nearby marsh, where it lay grounded after the hurricane subsided. The vessels, which had remained secure on the barge during the storm, were not damaged in any way. J.A. at 8, 18.
 
 
 3
 The United States directed Braswell, which had access to and custody over the barge while it lay in the marsh, to guard the vessels and to submit proposals for their retrieval. With government approval, Braswell removed the vessels from the barge by crane and transported them by truck to its shipyard, where it subsequently completed the repairs. Braswell submitted a claim to the United States contracting officer in the amount of $27,582.00, the cost Braswell incurred retrieving the vessels. After the contracting officer denied its claim, id. at 4-5, Braswell appealed to the Armed Services Board of Contract Appeals.
 
 
 4
 The Board, which granted summary judgment for the United States, focused on paragraph (b) of the Liability and Insurance clause of Braswell's contract with the United States, under which the government assumed "the risks of loss of and damage to the vessels." See id. at 18; see also id. at 23 (text of clause). Citing Lenfest v. Coldwell, 525 F.2d 717, 723-24 (2d Cir. 1975), a marine insurance case, the Board reasoned that there is a loss of a vessel when it no longer exists, when it is irretrievably sunk, when it is otherwise beyond the possible control of the insured, or constructively, when the cost of repair or recovery would exceed the value of the vessel. The Board concluded that:
 
 
 5
 Since the boats were not lost, either actually or constructively, Braswell had a continuing obligation under paragraph (e) of the Government Property clause[1] and FAR § 45.509 incorporated by reference therein,[2] paragraph (a) of the Liability and Insurance clause,[3] and common law principles of bailment, to exercise the same care for their protection as would the owner. Braswell also had a continuing obligation under paragraph (a) of the Performance clause to "diligently prosecute the work to completion." Retrieval of the boats for completion of the specified repairs was nothing more than what was required of Braswell under the foregoing terms of the contract.
 
 
 6
 J.A. at 18-19 (footnotes added). In sum, the Board held that "the Government in the Liability and Insurance clause did not assume the risk of all losses incurred as a result of the hurricane. It assumed only the risk of 'loss of and damage to' the boats, a casualty that did not occur." Id. at 19. Braswell appealed the Board's decision to the United States District Court for the District of South Carolina.[4]
 
 
 7
 The district court summarily affirmed the judgment of the Board. See id. at 93 ("[T]he Board decided the contract issue correctly and ... accordingly, Braswell cannot recover from the United States the cost of retrieving the boats under the contract."). The district court also ruled in favor of the United States on Braswell's salvage claim, which was advanced for the first time before the district court, apparently under its admiralty jurisdiction. The district court subsequently denied Braswell's motion to alter or amend the judgment, or in the alternative for a new trial, id. at 103, and this appeal followed.
 
 II.
 
 8
 On appeal, Braswell makes three arguments, none of which has merit. First, it argues that the district court erred in concluding that its costs incurred in retrieving the vessels were not compensable under the Liability and Insurance clause of the contract. Second, Braswell argues that, allegedly as a bailee, it was under a duty to exercise only reasonable care and that summary judgment was inappropriate because it had raised a genuine issue of material fact as to whether it had exercised such care. Finally, Braswell argues that the district court erred in denying its salvage claim.
 
 A.
 
 9
 In regard to its first claim, Braswell argues that its
 
 
 10
 position is simple and straightforward: The Navy agreed, in unqualified language in the contract, to assume"the risks of loss of and damage to" the three [vessels]. Therefore, the Navy assumed liability for all losses or damages generally recognized by maritime law, including the expenses incurred in recovering the [vessels] from the stranding caused by Hurricane Hugo. The contract is susceptible to no other interpretation.
 
 
 11
 Appellant's Br. at 4. We disagree. It simply does not follow from its assumption of "the risks of loss of and damage to" the vessels that the government also assumed, as Braswell contends, "liability for all losses or damages generally recognized by maritime law." The government assumed the risk of precisely, and only, what it expressly agreed in the contract to assume: loss of and damage to the vessels.
 
 
 12
 Even were we to accept Braswell's premise, that the government assumed "liability for all losses or damages generally recognized by maritime law," and allegedly therefore that the government assumed the risk of partial loss to the vessels, see id . at 5, we would still deny Braswell recovery: as the parties agreed, J.A. at 8, there was no damage to-no partial loss of-the vessels. While the "loss" incurred by Braswell in retrieving the vessels may have been a loss to Braswell, it was not a "loss of [or] damage to the vessels" themselves. The government assumed the risk of the latter loss, but not the former.[5]
 
 B.
 
 13
 Relying heavily on The Gulfport, 250 F. 577 (5th Cir.), cert. denied, 248 U.S. 560 (1918), a case with facts strikingly similar to the instant appeal, Braswell argues that it raised a genuine issue of material fact as to whether it had exercised reasonable care as a bailee of the vessels, and that the summary judgment entered against it was therefore inappropriate. In The Gulfport, the owner of a tugboat in need of repairs surrendered the tug to the libelant, which owned a drydock on the Mobile River. While the tug was docked, a violent hurricane struck, loosed the drydock from its moorings, and left the drydock, with the undamaged tug still attached, aground in a marsh. After finding that "[i]t was as a bailee that the owner of the drydock was in possession of the tug," the court concluded that:
 
 
 14
 This loss of possession was attributable to an act of God, and not to any fault or negligence of the bailee. The bailee not being under a duty to regain possession of bailed property so taken from it, the bailor is chargeable with the expense necessarily incurred to accomplish this result.
 
 
 15
 Id. at 580. We agree with Braswell that this case would mitigate for vacating the district court's judgment, if Braswell had assumed merely the duties of an ordinary bailee.
 
 
 16
 Here, however, the contract expanded Braswell's duties beyond those of an ordinary bailee. See United States v. Seaboard Mach. Corp., 270 F.2d 817, 819-20 (5th Cir. 1959) (The courts will give effect to a contract that clearly manifests an intent to expand the common law duties of an ordinary bailee.) (citing Sun Printing & Publishing Ass'n v. Moore, 183 U.S. 642, 654-55 (1902), cert. denied, 362 U.S. 941 (1960)).[6] For instance, under the Government Property clause, Braswell agreed to "be responsible and accountable for all Government property provided under this contract...." Under 48 C.F.R. § 45.509, incorporated by reference into that clause, Braswell was "responsible for the proper care, maintenance, and use of [the vessels] from the time of receipt until properly relieved of responsibility, in accordance with sound industrial practice and the terms of the contract." Moreover, again under the Government Property clause, Braswell also was under a duty to "establish and maintain a program for the use, maintenance, repair, protection, and preservation" of the vessels in accordance with sound industrial practice...." Finally, under the Performance clause, Braswell agreed to" diligently prosecute the work to completion" and to "furnish all necessary material, labor, services, equipment, supplies, power, accessories, facilities, and such other things and services as are necessary for accomplishing the work specified." See J.A. at 59.
 
 
 17
 Because Braswell assumed duties exceeding those of an ordinary bailee, its alleged exercise of reasonable care is immaterial to resolution of the dispute between the parties, and there is no need to remand for a trial with respect to this issue.
 
 C.
 
 18
 Finally, Braswell argues that the district court erred in denying its salvage claim. "Three elements are necessary to a valid salvage claim: 1. A marine peril. 2. Service voluntarily rendered when not required as an existing duty or from a special contract. 3. Success in whole or in part, or that the service rendered contributed to such success." The Sabine, 101 U.S. 384, 384 (1879). The district court held that Braswell did not satisfy the second requirement, because the contract imposed upon it a duty to "establish and maintain a program for the use, maintenance, repair, protection, and preservation of the vessels." Id. at 94 (quoting the Government Property clause).[7]
 
 
 19
 For all the reasons cited supra Part II.B., we agree with the district court. A "special contract" imposed upon Braswell a duty to retrieve the vessels, and therefore it was properly denied recovery under its salvage claim.
 
 CONCLUSION
 
 20
 For the reasons stated herein, we affirm the judgment of the district court.
 
 AFFIRMED
 
 21
 WIDENER, Circuit Judge, concurring in part and dissenting in part:
 
 
 22
 I concur in all of the majority opinion except Part II(B), and as to that and the result, I respectfully dissent. I would vacate the district court's grant of summary judgment and remand for further proceedings.
 
 
 23
 The majority affirms the district court's grant of summary judgment stating that Braswell's exercise of reasonable care is immaterial because Braswell had assumed duties exceeding those of an ordinary bailee. In Sun Printing & Publishing Ass'n v. Moore, 183 U.S. 642 (1902), the Supreme Court stated:
 
 
 24
 It is elementary that, generally speaking, the hirer in a simple contract of bailment is not responsible for the failure to return the thing hired, when it has been lost or destroyed without his fault. Such is the universal principle.... But it is equally true that where by a contract of bailment the hirer has either expressly or by fair implication assumed the absolute obligation to return, even although the thing hired has been lost or destroyed without his fault, the contract embracing such liability is controlling and must be enforced according to its terms.
 
 
 25
 183 U.S. at 654 (emphasis added). The majority holds that the contract between Braswell and the United States absolutely obligated Braswell to return the bailed vessels, but I believe that the contract neither expressly nor by fair implication placed such a duty on Braswell. Both the contract and the regulations incorporated therein made Braswell responsible and accountable for Government property and stated that Braswell must care for and maintain the property in accord with sound industrial practice. I read this language as expressing nothing more than the duty of an ordinary bailee to exercise reasonable care and to return property at the end of the bailment. If, as in this case, bailed goods are lost or destroyed by an Act of God, an ordinary bailee is not liable unless the bailor can prove concurrent negligence on the part of the bailee. See The Gulfport, 250 F. 577, 580 (5th Cir.), cert. denied, 248 U.S. 560 (1918).
 
 
 26
 The Gulfport, supra, is on facts for all practical purposes indistinguishable from the case at hand and comes to a conclusion opposite from the one attained by the majority. Even Seaboard Machinery, relied on by the majority, does no more than state the rule I have recited from Sun Printing.
 
 
 27
 Accordingly, I would vacate the judgment of the district court and remand for further proceedings. If no further facts appear, Braswell should be entitled to judgment, for there is no dispute but that an Act of God occasioned the loss, regardless of who must bear it.
 
 
 
 [1]
 That clause provides in relevant part that:
 The Contractor shall be responsible and accountable for all Government property provided under this contract.... The Contractor shall establish and maintain a program for the use, maintenance, repair, protection, and preservation of Government property in accordance with sound industrial practice....FC1148 C.F.R. § 52.245-2(e); see also J.A. at 39.
 
 
 [2]
 That section provides in relevant part that:
 The contractor shall be responsible for the proper care, maintenance, and use of Government property in its possession or control from the time of receipt until properly relieved of responsibility, in accordance with sound industrial practice and the terms of the contract.
 
 
 [48]
 C.F.R. § 45.509; see also J.A. at 45
 
 
 [3]
 That clause provides in relevant part that:
 The Contractor shall exercise reasonable care and use the Contractor's best efforts to prevent accidents, injury or damage to all employees, persons and property, in and about the work, and to the vessel or part thereof upon which work is done.
 J.A. at 22.
 
 
 [4]
 United States district courts, not the United States Court of Appeals for the Federal Circuit, which customarily hears appeals from Board decisions, have jurisdiction over appeals from the disposition of ship repair claims. Southwest Marine v. United States, 896 F.2d 532, 534-35 (Fed. Cir. 1990)
 
 
 [5]
 Braswell also argues that by assuming the risk of loss or damage to its vessels, the government assumed the risks as a private insurer. We reject this argument. There is nothing in the written agreement between Braswell and the government that in any way suggests that the government undertook -impliedly or otherwise-the responsibilities of a private insurer
 
 
 [6]
 Braswell, citing paragraph (a) of the Liability and Insurance clause, see J.A. at 22 ("The Contractor shall exercise reasonable care and use the Contractor's best efforts to prevent ... damage ... to the vessel ...."), argues that the contract imposed upon it only a duty to exercise reasonable care. This argument is defective in several respects. First, as developed supra Part II.A., there was no "damage ... to the vessel[s]"; accordingly, whether Braswell exercised reasonable care to prevent such damage is immaterial. Second, the fact that this clause imposes upon Braswell a duty of reasonable care does not preclude different parts of the contract from imposing additional duties, as we conclude they do. Finally, the duty imposed upon Braswell under this clause to exercise its "best efforts" is additional to the duty imposed under this clause to exercise "reasonable care"; these two duties may not be coterminous
 
 
 [7]
 The district court noted also that Braswell had admitted that the South Carolina Coastal Council had required Braswell to remove its barge from the marsh. J.A. at 94. At oral argument, it was noted that Braswell had already removed the vessels from the barge before issuance of the council's order. In view of our disposition of this issue, we need not consider whether the subsequent order to remove the barge could cause Braswell's earlier removal of the vessels to be other than a "[s]ervice voluntarily rendered when not required as an existing duty." Moreover, because we agree with the district court that, pursuant to the terms of the contract, Braswell was under a preexisting duty to retrieve the vessels, we need not consider either whether a marine peril existed or whether Braswell's retrieval efforts were successful