**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-2921
_____

ESTATE OF KWANG LEE,
                          Deceased, Anthony J. Frese, Executor

v.

COMMISSIONER OF INTERNAL REVENUE
_____

On Appeal from the United States Tax Court
(T.C. No. 20531-18L)
Hon. Travis A. Greaves
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
July 14, 2022

Before: GREENAWAY, JR., MATEY, and NYGAARD, *Circuit Judges.*

(Filed: August 23, 2022)
_____

OPINION*
_____

---

* This disposition is not an opinion of the full Court and, under I.O.P. 5.7, does not constitute binding precedent.

MATEY, *Circuit Judge*.

Who owes what summarizes this matter of distributions and deficiencies. Kwang Lee's assets have passed to his beneficiaries. But his Estate miscalculated the tax due, creating a liability. The Estate asked the Government to accept a compromise, but the Commissioner of Internal Revenue believes he can collect more by other means. The Tax Court agreed he can and, finding no error, we will affirm that judgment.

## I.

Kwang Lee died testate in 2001. The Executor of Lee's Estate, Anthony J. Frese, sought legal advice on the implications of a survivor provision in Lee's will, and after receiving guidance, miscalculated the Estate tax owed. *Est. of Lee v. Comm'r (Kwang Lee I)*, 94 T.C.M. (CCH) 604, at *1–2 (T.C. 2007). The Estate received a notice of deficiency in 2006 and a formal assessment followed in 2010. But much of the money was gone. Because between 2004 and 2010, the Estate distributed over $1 million to Lee's beneficiaries, including $640,000 shortly after Frese received the notice of deficiency.

With the tax still owing in 2013, the Commissioner filed a tax lien. In response, the Estate made an offer in compromise ("OIC") of the Estate's remaining assets. (But that was less than the Commissioner thought he could collect from all sources, and so the Internal Revenue Service Office of Appeals ("Office") declined the OIC. The Estate challenged that decision, exhausting its administrative remedies before petitioning for

2

relief in Tax Court. The Tax Court granted summary judgment to the Commissioner and this appeal followed. We will now affirm.[1]

## II.

Estate taxes take priority over other obligations, including the distribution of property to beneficiaries. *See* 31 U.S.C. § 3713. If tax liabilities exceed assets, an estate may make an OIC. *See* I.R.C. § 7122(a); 26 C.F.R. (Treas. Reg.) § 301.7122-1. But the Commissioner need not compromise, and can reject an OIC if, in his determination, it falls below the reasonable collection probability ("RCP"), meaning the amount the Commissioner believes he can acquire through collections. *See* Treas. Reg. § 301.7122-1(c)(1); Internal Revenue Manual ("Manual") § 5.8.4.3.[2] One source the Commissioner may look to is the estate's executor. When an executor transfers property before satisfying a known estate tax, the executor may be held personally liable. I.R.C. § 3713(b); *id.* § 6901(a)(1)(B); *see United States v. Renda*, 709 F.3d 472, 480 (5th Cir. 2013).

---

[1] The Tax Court had jurisdiction under I.R.C. § 6330(d), and we have jurisdiction under I.R.C. § 7482(a)(1). We review the Tax Court's grant of summary judgment de novo, *Duquesne Light Holdings, Inc. & Subsidiaries v. Comm'r*, 861 F.3d 396, 403 (3d Cir. 2017), and, because the tax liability is not in dispute, the decisions of the Office for an abuse of discretion. *See Amanda Iris Gluck Irrevocable Trust v. Comm'r*, 154 T.C. 259, 266 (2020). So we will "set aside" the Office's determinations only if they are "unreasonable in light of the record compiled before the agency." *Dalton v. Comm'r*, 682 F.3d 149, 155 (1st Cir. 2012). Similarly, "[w]e will only disturb the rejection of [an] offer-in-compromise if it represents 'a clear abuse of discretion in the sense of clear taxpayer abuse and unfairness by the IRS.'" *Murphy v. Comm'r*, 469 F.3d 27, 32 (1st Cir. 2006) (quoting *Olsen v. United States*, 414 F.3d 144, 150 (1st Cir. 2005)).

[2] If the Commissioner can believe the RCP exceeded the OIC—even if the Commissioner gets the amounts wrong—there is no abuse of discretion. *See Johnson v. Comm'r*, 136 T.C. 475, 490–92 (2011), *aff'd*, 502 F. App'x 1 (D.C. Cir. 2013).

Here, the Tax Court concluded the Office did not abuse its discretion in declining the Estate's OIC. The Estate challenges that determination for three reasons, but we find all to lack merit.

## A.    Timing

To start, the Estate argues that the time to collect from Frese has run, so the amount collectible from him should not have been included in the RCP.[3] For support, the Estate points to a Manual provision providing that "[g]enerally, a three year time frame will be used to determine if it is appropriate to include a dissipated asset in RCP." I.R.M. § 5.8.5.18(2). And because the Commissioner did not bring his action within that time, the Estate argues that the RCP was inflated. This argument is unavailing for two reasons.

First, "dissipated assets" are not relevant here. Dissipation occurs "where it can be shown the taxpayer has sold, transferred, encumbered or otherwise disposed of assets in an attempt to avoid the payment of the tax liability." I.R.M. § 5.8.5.18(1). And that "attempt to avoid" payment "is normally defined as the transfer of assets for less than full value or use of proceeds." *Id.* But the Commissioner does not allege dissipation, which would increase RCP but not involve potential third-party liability, *see id.* Since there was no allegation of dissipation under § 5.8.5.18(2), the three-year period does not apply.

Second, even if dissipated assets were relevant, the three-year look-back period is not mandatory. *See Marks v. Comm'r*, 947 F.2d 983, 986 n.1 (D.C. Cir. 1991) (per curiam).

---

[3] The Commissioner also argued that he could collect from Lee's children. *See* I.R.C. § 6324(a)(2). But the Tax Court did not rule on this issue, so we do not address transferee liability.

4

The Manual is not a regulation with the force of law. *See Vallone v. Comm'r*, 88 T.C. 794, 807–08 (1987). And it does not "confer rights on taxpayers." *In re Pransky*, 318 F.3d 536, 544 n.7 (3d Cir. 2003) (quoting *Carlson v. United States*, 126 F.3d 915, 922 (7th Cir. 1997)). Instead, the Manual guides the behavior of service agents. *See id.*[4] The Commissioner was not bound by this three-year period.[5]

## B.  Non-Probate Assets

Next, the Estate argues that non-probate stock options transferred to the beneficiaries by operation of law, rather than by Frese's actions, meaning he escapes liability under § 3713. But this argument was not raised before the Tax Court. Rather, when the Commissioner argued below that the stock options were distributed by Frese, the Estate only objected to the relevance of that fact. Because this issue was not litigated below, and our review is limited to the "record compiled before the agency," *Dalton*, 682 F.3d at 155, we will not consider it now.[6] *See Visco v. Comm'r*, 281 F.3d 101, 104 (3d Cir. 2002) (per curiam) (holding claims not raised before the Tax Court waived).

---

[4] True, when agents follow the Manual, their actions are unlikely to constitute an abuse of discretion. *See Savedoff v. Comm'r*, 120 T.C.M. (CCH) 173 (T.C. 2020), at \*5. But the inverse does not follow. *See Fairlamb v. Comm'r*, 99 T.C.M. (CCH) 1103 (T.C. 2010), at \*7 ("Deviation from [the Manual] does not necessarily render the Commissioner's action invalid.").

[5] Indeed, the record shows the Commissioner timely asserted liability against Frese. The Commissioner may assess the liability of a fiduciary "not later than the expiration of the period for collection of the tax in respect of which such liability arises." I.R.C. § 6901(c)(3); *see also* Treas. Reg. § 301.6901-1(c)(4). Here, because the tax was assessed in July 2010, the Commissioner ordinarily had until July 2020 to collect. *See id.* § 6502(a)(1). But the limitations period for collection was tolled in May 2013 until the completion of this appeal. *See id.* § 6330(e).

[6] Though we note that the Form 706 lists the options as probate assets.

## C. Professional Advice

Finally, the Estate says that Frese cannot be held personally liable because he relied on professional advice. But Frese consulted counsel in preparing the Estate's tax returns, not later when the assets were distributed. And even assuming the legal advice was relevant to the later distributions, there is no professional reliance defense when an executor has actual knowledge of the tax deficiency. Which Frese had because he received notice of the lien. *See New v. Comm'r*, 48 T.C. 671, 676 (1967); *Leigh v. Comm'r*, 72 T.C. 1105, 1113 (1979); *see also Renda*, 709 F.3d at 484 ("We follow the majority of other courts in holding that a representative's actual knowledge of a federal claim is sufficient, notwithstanding that representative's reliance on the erroneous advice of counsel as to how to address the claim."); *cf. Little v. Comm'r*, 113 T.C. 474, 482 (1999) (applying a good-faith reliance defense where the executor relied on attorney's advice to learn the estate's tax liabilities).[7]

## III.

The Commissioner did not abuse his discretion in refusing the OIC. Nor did the Tax Court err in granting summary judgment. So we will affirm the judgment of the Tax Court.

---

[7] The Tax Court's finding in *Estate of Lee v. Comm'r (Kwang Lee II)*, 97 T.C.M. (CCH), at *5 (T.C. 2009), does not suggest otherwise. There, the Court found the Estate was not liable for penalties resulting from Frese's inaccuracy and failure to file because Frese "was reasonable and acted in good faith in relying on the advice" of counsel. *Id.* at *5. But we decide a different question now—whether Frese may be held personally liable when he made distributions with knowledge of the deficiency.