# IN THE SUPREME COURT OF TEXAS

═══════════

No. 18-0486

═══════════

BRIAN ERIKSON AND QUILLING, SELANDER, LOWNDS, WINSLETT & MOSER, P.C.,
PETITIONERS,

v.

OSCAR RENDA, RESPONDENT

═══════════════════════════════

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE SEVENTH DISTRICT OF TEXAS

═══════════════════════════════

**Argued September 26, 2019**

JUSTICE GUZMAN delivered the opinion of the Court.

JUSTICE BLAND did not participate in the decision.

This attorney-malpractice case requires us to examine the reach of the *Hughes* tolling rule.[1]

Long after a corporate officer incurred personal liability for transferring corporate assets in violation

of a federal statute,[2] he sued the lawyer who purportedly "blessed" the transactions without warning

him about the collateral consequences. As all agree, the malpractice claim is time-barred unless

---

[1] *Hughes v. Mahaney & Higgins*, 821 S.W.2d 154, 157 (Tex. 1991).

[2] 31 U.S.C. § 3713 (the "Priority of Government claims" statute).

limitations was tolled under *Hughes*, which applies when legal malpractice is committed "in the prosecution or defense of a claim that results in litigation."[3] If that criteria is satisfied, the statute of limitations is tolled until all appeals in the "underlying claim" in which the alleged malpractice occurred have been exhausted or the litigation is otherwise finally concluded, such as by dismissal or settlement.[4]

*Hughes* tolling is animated by several policy considerations unique to malpractice claims, but it is a "clear and strict," "categorical," and "bright-line rule" applicable only to the category of legal-malpractice claims falling within the articulated paradigm.[5] Though we have not previously considered the nexus required to come within the *Hughes* tolling rule, our cases applying the rule share as a unifying principle that the actions giving rise to the malpractice claim were integrally connected to the prosecution or defense of a claim. The legal advice at issue here lacks the nexus required to come within the *Hughes* tolling rule because it was only incidentally related to the prosecution or defense of a claim. We therefore reverse the court of appeals' judgment and render judgment dismissing the malpractice claim as untimely.

---

[3] *Hughes*, 821 S.W.2d at 157.

[4] *Apex Towing Co. v. Tolin*, 41 S.W.3d 118, 119, 123 (Tex. 2001) (underlying litigation was "finally concluded" when the court of appeals dismissed the pending appeal based on the parties' settlement); *see Hughes*, 821 S.W.2d at 156.

[5] *Apex Towing*, 41 S.W.3d at 122.

2

# I. Background

Oscar Renda's malpractice suit against Brian Erikson and Quilling, Selander, Lownds, Winslett & Moser, P.C. (collectively, Erikson) is set against the backdrop of protracted litigation between Renda Marine, Inc. (Marine) and the United States Government concerning Marine's performance under a government dredging contract (the *Marine* litigation). After Marine was found liable to the federal government, Renda, as Marine's president and sole shareholder, transferred Marine's assets to various Renda-controlled creditors in 2003. These financial transactions served as the catalyst for the professional-liability suit Renda filed against Erikson eleven years later.

The precise details of the *Marine* litigation are not pertinent to the limitations issue on appeal, but a brief overview provides helpful context.[6] The *Marine* litigation involved two sets of claims: (1) Marine's claims for $14.2 million in additional compensation under its contract to dredge the Houston–Galveston shipping channel, which were concluded adversely to Marine when appeals were exhausted in 2008,[7] and (2) the federal government's damages claims against Marine for incomplete and deficient dredging work, which resulted in a November 26, 2002 administrative determination that Marine was liable to the government for $11.86 million. Marine's indebtedness to the government became final and could no longer be challenged, set aside, or appealed when the company failed to appeal by November 26, 2003. Erikson represented Marine in prosecuting and

---

[6] The factual background of the Marine litigation is fully discussed in numerous federal opinions including *United States v. Renda Marine, Inc.*, 667 F.3d 651 (5th Cir. 2012), and *United States v. Renda*, 709 F.3d 472 (5th Cir. 2013).

[7] *See Renda Marine, Inc. v. United States*, 509 F.3d 1372 (Fed. Cir. 2007) (reh'g and reh'g en banc denied Mar. 11, 2008); *Renda Marine, Inc. v. United States*, 71 Fed. Cl. 782 (2006) (denial of motion to reconsider certain prior rulings); *Renda Marine, Inc. v. United States*, 66 Fed. Cl. 639 (2005) (merits decision).

defending both sets of claims, and the failure to appeal the November 26, 2002 liability determination provided the basis for Marine's malpractice suit against him several years later.

Renda's malpractice suit against Erikson arises from legal advice Erikson reportedly provided in the summer of 2003. At that point, an appeal involving Marine's claims was pending in the Court of Federal Claims and its liability on the government's $11.86 million claims had been determined but was still appealable. Marine's financial status was precarious—its liabilities vastly exceeded its assets, interest on debts continued to accrue, and legal fees were mounting. So, Marine's accountant made plans to "clean up" debt the company had incurred through intra-company loans.

The accountant—who also represented Renda and Oscar Renda Contracting, Inc. (Renda Contracting)—had several accounting and tax concerns related to Marine's debt load, but was spurred to action when Renda Contracting's insurer requested that Marine pay off its debt to the contracting company. The accountant contacted Erikson for advice about two options for resolving Marine's debt obligations: Marine could either (1) declare bankruptcy or (2) transfer its assets to eliminate its debt obligations to various creditors.

Erikson reportedly rejected the bankruptcy option, but "blessed" the asset-transfer option, with the caveat that the federal Anti-Assignments Act prohibited Marine from transferring its claims against the government to a creditor.[8] Effective July 31, 2003, the accountant "act[ed] on Erikson's advice and approval" by assisting Marine in transferring $8.56 million in assets to Renda, Renda

---

[8] *See* 41 U.S.C § 6305.

Contracting, and other Renda-controlled companies to satisfy Marine's debts to those creditors. These transactions left Marine unable to satisfy its liability to the government.

In 2005, Marine sued Erikson, alleging he committed malpractice in failing to appeal the November 2002 liability determination based on the erroneous conclusion that the administrative decision could be collaterally attacked in the then-pending appeal of Marine's claims. Marine's malpractice suit was settled before the year's end for $2 million, and those funds were transferred to Renda Contracting to further discharge Marine's debt obligations. Renda asserts that transaction was made in reliance on Erikson's 2003 "blessing" of the earlier asset transfers. When all was said and done, more than $10.5 million in Marine's assets were transferred to satisfy its debts to Renda-related entities.

Renda maintains that he did not discover until years later that the asset transfers violated a federal priorities statute obligating debtors to prioritize payments to the federal government when satisfying debt obligations (the Priority Statute).[9] Under the Priority Statute, Renda's authorization of the transfer on Marine's behalf made him personally liable for the company's debt to the government in the amount of the transferred assets.[10]

The government learned about the asset transfers through Marine's disclosures in the course of a 2008 suit to enforce its judgment against Marine. Armed with newly discovered information about the asset transfers, the government instituted parallel litigation against Renda under the

_____

[9] *See* 31 U.S.C. § 3713.

[10] *Id.* § 3713(b) ("A representative of a person . . . paying any part of a debt of the person . . . before paying a claim of the Government is liable to the extent of the payment for unpaid claims of the Government.").

Priority Statute, alleging he was personally liable for the amount of the 2003 and 2005 financial transactions because he had authorized the transfers as Marine's representative when the company was insolvent and owed a debt to the government (the Priority Suit). Renda was served with the Priority Suit in August 2009.

The government's enforcement action resulted in a judgment against Marine for the full amount of the administrative award—$11.8 million plus interest.[11] Marine appealed, but the Fifth Circuit affirmed, and the United States Supreme Court denied Marine's appeal on April 15, 2013.[12]

In the meantime, the government successfully obtained a $12.54 million damages-and-interest judgment against Renda in the Priority Suit. The Fifth Circuit affirmed, holding that for purposes of the Priority Act, the liability determination became "a claim of the United States Government" when it was issued in November 2002 even though it was not final until a year later.[13] Renda's appeals in the Priority Suit were exhausted when the Supreme Court denied certiorari on November 12, 2013.

Renda paid the Priority Suit judgment, but filed a malpractice suit against Erikson on June 24, 2014, alleging Erikson failed to inform him that the asset transfers on Marine's behalf would make him personally liable for satisfying the government's claim against Marine. The malpractice suit was filed eleven years after Erikson "blessed" Marine's asset-transfer plan, nearly five years

---

[11] *United States v. Renda Marine, Inc.*, 750 F. Supp. 2d 755 (E.D. Tex. 2010) (rendering judgment on Marine's indebtedness to the government and requiring Marine to repay $3 million improperly paid in excess of the original contract price).

[12] *United States v. Renda Marine, Inc.*, 667 F.3d 651 (5th Cir. 2012), *cert. denied* 113 S. Ct. 1800 (2013).

[13] *United States v. Renda*, 709 F.3d 472, 481-83 (5th Cir. 2013) (under the Priority Statute, "a claim arising out of a government contract need not be final to be accorded priority"), *cert. denied* 134 S. Ct. 618 (2013).

after Renda was served in the Priority Suit, and seven months after appeals were exhausted in the Priority Suit.

Erikson moved for summary judgment on the affirmative defenses of limitations and release. Erikson's motion asserted Renda's claims were, as a matter of law, (1) barred by the two-year statute of limitations and (2) released in the 2005 settlement of Marine's malpractice claims. Renda conceded he discovered the alleged malpractice no later than the date he was served with the Priority Suit, but he argued that *Hughes* tolling prevented the statute of limitations from commencing until appeals in that suit were exhausted, which was November 12, 2013. He also argued that the release he executed on Marine's behalf in 2005 could not reasonably be construed to encompass his individual claims.

The trial court granted summary judgment in Erikson's favor and rendered a take-nothing judgment, but the court of appeals reversed and remanded. The court held that fact issues precluded summary judgment on Erikson's limitations defense and Renda's individual claims were not "clearly within the subject matter of the [2005] release."[14]

On petition for review to this Court, Erikson challenges only the statute-of-limitations ruling. As to that issue, the court of appeals agreed with other appellate courts in holding *Hughes* tolling does not apply to legal malpractice occurring in "mere transactional work."[15] But the court found disputed fact issues existed about whether Erikson's asset-transfer "advice pertained to merely

---

[14] 547 S.W.3d 901, 913, 916 (Tex. App.—Amarillo 2018). The appeal was transferred from the Fort Worth court of appeals to the Amarillo court of appeals pursuant to a docket equalization order. *See* TEX. GOV'T CODE § 73.001; TEX. R. APP. P. 41.3 (transferee court must apply the precedent of the transferring court).

[15] 547 S.W.3d at 910-11.

7

transactional work or the prosecution or defense of claims" and whether "the group of clients to whom Erikson gave advice . . . encompassed Renda in his personal capacity."[16]

Regarding the former, the court identified two distinct "claims" that could support *Hughes* tolling: (1) the Government's debt claim against Marine and (2) Renda's debt claim against Marine.[17] According to the court, Renda's malpractice claim would be amenable to *Hughes* tolling if Renda and the entities related to him sought Erikson's advice, not merely to facilitate financial transactions, but in relation to the prosecution and defense of those debt claims.[18] The court concluded that depending on the disposition of the identified fact issues, the malpractice claim, as alleged, could fall within the tolling rule's paradigm because Erikson's approval of the asset transfer with only a limited qualification resulted in a third-party lawsuit by the government against Renda, Erikson's putative client.[19] If a jury resolved the issues of fact favorably to Renda, "then limitations was tolled until the underlying suit (i.e., the Priority Suit) was finally resolved," making the 2014 malpractice suit timely.

We granted Erikson's petition for review to address the scope of the *Hughes* tolling rule, which we have had few occasions to revisit since its adoption nearly thirty years ago.

---

[16] *Id.* at 911.

[17] *Id.*

[18] *Id.*

[19] *Id.* at 910-11.

8

## II. Discussion

We review summary judgments de novo, viewing the evidence in the light most favorable to the non-movant, crediting evidence favorable to the non-movant if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not.[20] A defendant who moves for summary judgment based on limitations must conclusively establish the elements of that defense, including when the cause of action accrued.[21] The defendant must also conclusively negate application of the discovery rule and any tolling doctrines pleaded as an exception to limitations.[22]

The statute of limitations for legal malpractice is two years after a cause of action accrues.[23] A legal injury is incurred, and a cause of action accrues, when faulty professional advice is taken.[24] But because the discovery rule applies to legal-malpractice claims,[25] accrual is deferred until the client discovers, or should discover, the wrongful act and injury.[26] By adopting the discovery rule for legal-malpractice claims, we have accepted that such claims are inherently undiscoverable

---

[20] *Mann Frankfort Stein & Lipp Advisors, Inc.*, 289 S.W.3d 844, 848 (Tex. 2009).

[21] *Schlumberger Tech. Corp. v. Pasko*, 544 S.W.3d 830, 833-34 (Tex. 2018).

[22] *Id.* at 834; *Diaz v. Westphal*, 941 S.W.2d 96, 97-98 (Tex. 1997); *Jennings v. Burgess*, 917 S.W.2d 790, 793 (Tex. 1996).

[23] TEX. CIV. PRAC. & REM. CODE § 16.003(a); *Hughes v. Mahaney & Higgins*, 821 S.W.2d 154, 156 (Tex. 1991).

[24] *Murphy v. Campbell*, 964 S.W.2d 265, 270-71 (Tex. 1997).

[25] *Willis v. Maverick*, 760 S.W.2d 642, 646 (Tex. 1988).

[26] *Childs v. Haussecker*, 974 S.W.2d 31, 40 (Tex. 1998).

because "'[i]t is unrealistic to expect a layman client to have sufficient legal acumen to perceive an injury at the time of the negligent act or omission of his attorney.'"[27]

But even applying the discovery rule in this case, Renda concedes his cause of action accrued, at the latest, in August 2009 when he was served with the Priority Suit. Because that was nearly five years before Renda sued Erikson, the malpractice suit was untimely unless the equitable tolling rule we adopted in *Hughes v. Mahaney & Higgins* applies.[28]

In *Hughes*, we held that "when an attorney commits malpractice in the prosecution or defense of a claim that results in litigation, the statute of limitations on the malpractice claim against the attorney is tolled until all appeals on the underlying claim are exhausted."[29] Renda argues that "the underlying claim" is the Priority Suit—litigation he says resulted from malpractice occurring in the prosecution or defense of either the federal government's debt claim against Marine or his debt claim against Marine. That being the case, Renda contends the lawsuit was timely because appeals in the Priority Suit were exhausted and tolling ended less than two years before he sued Erickson.

We have substantively addressed *Hughes* tolling in only a handful of cases,[30] but those opinions have shaped the tolling doctrine into a carefully crafted and narrowly defined rule with

---

[27] *Willis*, 760 S.W.2d at 645 (citation omitted); *S.V. v. R.V.*, 933 S.W.2d 1, 6 (Tex. 1996).

[28] 821 S.W.2d 154 (Tex. 1991).

[29] *Id.* at 156.

[30] *Underkofler v. Vanasek*, 53 S.W.3d 343, 345-46 (Tex. 2001); *Apex Towing Co. v. Tolin*, 41 S.W.3d 118, 122-23 (Tex. 2001); *Am. Centennial Ins. Co. v. Canal Ins. Co.*, 843 S.W.2d 480, 483-84 (Tex. 1992); *Sanchez v. Hastings*, 898 S.W.2d 287, 288 (Tex. 1995); *Gulf Coast Inv. Corp. v. Brown*, 821 S.W.2d 159, 160 (Tex. 1991); *Aduddell v. Parkhill*, 821 S.W.2d 158, 159 (Tex. 1991); *see Murphy v. Campbell*, 964 S.W.2d 265, 272 (Tex. 1997) (accountant malpractice).

10

established boundaries. Construing the record in the light most favorable to Renda, the legal advice Erikson provided with respect to Marine's asset transfers does not fall within the rule's parameters.

## A. *Hughes* Tolling

The legal-malpractice suit in *Hughes* arose from an adoption action and suit to terminate parental rights. The attorney representing the adoptive parents secured an affidavit of voluntary relinquishment from the biological mother and filed suit the next day to terminate parental rights.[31] The biological mother later revoked the affidavit, but the adoptive parents prevailed in the termination case nonetheless.[32] On appeal, the termination judgment was reversed and the suit dismissed. The court held that the adoptive parents lacked standing because the attorney had named himself, and not his clients, as the child's temporary managing conservator in the relinquishment affidavit.[33]

Many years after the lawyer drafted the defective affidavit, the adoptive parents sued for malpractice, but the suit was dismissed as untimely. We reversed, holding the suit was not time-barred because the limitations period was tolled until appeals in the underlying termination case had finally concluded.[34] Adopting what would become the opinion's eponymous tolling rule, we found two compelling policy concerns justified an exception to limitations: (1) "the legal injury and discovery rules can force the client into adopting inherently inconsistent litigation postures in

---

[31] *Hughes*, 821 S.W.2d at 155.

[32] *Id.* at 155-56.

[33] *Id.*

[34] *Id.* at 156-57.

11

the underlying case and in the malpractice case," compromising the likelihood of the client's success in both suits, and (2) "the viability of the second cause of action [the malpractice case] depends on the outcome of the first [the one in which the malpractice allegedly occurred]."[35] The adoptive parents' malpractice claim fit the tolling rule formulated in *Hughes* because the attorney's alleged malpractice (the defective affidavit) had occurred, not while a lawsuit was pending, but in the prosecution of a claim (for adoption) that resulted in litigation (a parental termination suit), which was not finally terminated until appeals were exhausted.

Two weeks after issuing *Hughes*, we said in *Gulf Coast Inv. Corp. v. Brown* that there was "no reason why the [*Hughes*] tolling rule . . . should not apply when the attorney's malpractice results, not in an appeal on the underlying claim, but in a wrongful foreclosure action by a third-party [sic] against the client."[36] In that case, a corporation had hired a law firm to conduct a non-judicial foreclosure sale of real property owned by a third party.[37] Two months after the sale, the property owners sued to invalidate it based on improper notice.[38] The wrongful-foreclosure suit settled within two years,[39] and the corporate client sued for legal malpractice several months later.

---

[35] *Id.*

[36] 821 S.W.2d 159, 160 (Tex. 1991).

[37] *Id.*

[38] *Id.*

[39] *Id.*

12

The court of appeals dismissed the malpractice suit as time-barred because it was filed more than two years after the corporation was served in the wrongful-foreclosure lawsuit.[40] We reversed. Relying on *Hughes*, we held tolling did not cease until final resolution of the wrongful-foreclosure suit.[41] *Gulf Coast* addressed the "results in litigation" aspect of the *Hughes* tolling rule and clarified that *Hughes* tolling applies when attorney malpractice in the prosecution of a claim (non-judicial foreclosure in that case) results, not in an appeal of client-initiated litigation, but in third-party litigation.

Not long after, we "elaborated on the first policy aspect of the *Hughes* rule, noting that attorney-client trust would be eroded if the client had to scrutinize every stage of the case for possible misstep."[42] But we have nevertheless declined to extend *Hughes* tolling to professional liability beyond legal-malpractice claims, even when the same policy concerns were implicated. In *Murphy v. Campbell*, which involved tax litigation resulting from accountant malpractice, we held that the "[discovery] rule should apply whether the [professional] advisor is a lawyer or an accountant," but *Hughes* tolling does not.[43] We noted that *Hughes* tolling was "expressly limited . . . to attorney malpractice in the prosecution or defense of a claim that results in litigation" and had been "restricted . . . to the circumstances presented."[44] We further explained that the tolling rule did

---

[40] *Id.*

[41] *Id.*

[42] *Apex Towing Co. v. Tolin*, 41 S.W.3d 118, 122-23 (Tex. 2001) (discussing *Sanchez v. Hastings*, 898 S.W.2d 287, 288 (Tex. 1995)).

[43] 964 S.W.2d 265, 271-72 (Tex. 1997).

[44] *Id.* at 272.

13

not apply *whenever* its underlying policies were implicated, because "[s]uch an exception to limitations would be far too broad."[45]

We offered our most robust examination of the tolling doctrine several years later in *Apex Towing v. Tolin*.[46] There, we recognized that the terminal point in the underlying litigation could be something other than exhaustion of appeals.[47] Accordingly, we clarified that when *Hughes* tolling applies, "the statute of limitations on a malpractice claim against [an] attorney is tolled until all appeals on the underlying claim are exhausted or the litigation is *otherwise finally concluded*."[48] But more importantly, and in counterpoise to *Murphy*, we also held that the tolling rule applies categorically even when the rule's root policy concerns are *not* implicated.[49]

The underlying litigation in *Apex Towing* terminated when the parties settled the dispute and the court of appeals dismissed the pending appeal.[50] Although the malpractice suit was filed within two years of that event, the defendant attorneys took the position that *Hughes* tolling did not apply, asserting that much of the impetus for adopting the rule was inapplicable because the clients had hired replacement counsel and the underlying case had settled.[51] They argued that "the *Hughes* tolling rule should be applied on a case-by-case basis, only when the policy reasons behind the rule

---

[45] *Id.*

[46] 41 S.W.3d 118 (Tex. 2001).

[47] *Id.* at 119.

[48] *Id.* (emphasis added).

[49] *Id.* at 120-22.

[50] *Id.* at 119, 122.

[51] *Id.* at 120.

14

also apply directly to the facts of the specific case under review."[52] But we firmly rejected *Hughes* tolling as anything other than a "categorical" rule.[53]

Whatever uncertainty preceded *Apex Towing*, it is now settled that *Hughes* tolling applies "in each legal-malpractice case matching the *Hughes* paradigm" "without re-examining whether the policy reasons behind [it] apply."[54] This is so, "because in the area of limitations, bright-line rules generally represent the better approach" and help ensure "predictability and consistency" in the jurisprudence.[55] We have thus mandated a "strict application" of the tolling rule limited "to the category of legal-malpractice cases encompassed within its definition,"[56] whether its policy concerns are implicated or not.

The dispute here is whether Erikson's purported blessing of the 2003 and 2005 asset transfers falls within the category of legal-malpractice claims encompassed in the *Hughes* tolling rule's definition: legal malpractice committed "in the prosecution or defense of a claim that results in litigation." For purposes of the summary-judgment motion, Erikson assumes legal malpractice occurred in connection with the asset transfers and that litigation resulted. The only contested matter is whether malpractice occurred "in the prosecution or defense of a claim." Erikson says that element is conclusively negated because (1) the only claims that were prosecuted or defended were

---

[52] *Id.*

[53] *Id.* at 121-22.

[54] *Id.* at 122.

[55] *Id.*

[56] *Id.*

15

the government and Marine's claims against one another in the *Marine* litigation; (2) the asset-transfer advice might bear some connection with the *Marine* litigation but it was wholly unrelated to the actual prosecution or defense of those claims; and (3) Renda was not his client in the *Marine* litigation.

Leaning primarily on the tolling rule's underlying policies, Renda argues *Hughes* tolling applies because (1) defending the Priority Suit and prosecuting the malpractice suit would force him to take inconsistent positions and (2) the viability of the malpractice suit is inextricably linked with the outcome of the Priority Suit. He also relies on a broad construction of the tolling rule as applying to legal malpractice "arising from," "relating to," or "connected with" the prosecution or defense of a claim.

As we clarified in *Apex Towing*, we look to the rule, not its motivating policies, to determine its application. And in doing so, we agree with Erikson that the only claims that were prosecuted or defended were those in the *Marine* litigation and the asset transfers were not engaged to prosecute or defend those claims. We also decline to stretch the rule to encompass the type of tenuous connection that exists between the malpractice alleged here and the prosecution or defense of a claim. The weak nexus Renda proposes sweeps far too broadly and would transform a crucial limitation into little more than a drive-by requirement.

### B. "In The Prosecution or Defense of A Claim"

Ordinarily, we do not parse the language in our opinions like the words in a statute. But the endeavor is useful here because *Hughes* tolling is a categorical rule, and we chose its enabling language with care. The rule does not apply every time legal "malpractice . . . results in litigation."

16

Rather, we included a critical limitation: the malpractice must be committed "in the prosecution or defense of a claim."

Our *Hughes* tolling cases confirm that these terms carry their ordinary meaning within the legal-services context. "Claim" refers to "[t]he assertion of an existing right; any right to payment or to an equitable remedy, even if contingent or provisional" and "[a] demand for money, property, or a legal remedy to which one asserts a right . . . ."[57] "Prosecution" and "Defense" are opposing sides of the same coin. To prosecute something means "[t]o commence and carry out (a legal action)."[58] Defense refers to "[a] defendant's stated reason why the plaintiff . . . has no valid case"[59] and to defend a claim means "to do something [protective] . . . [t]o deny, contest, or oppose (an allegation or claim) . . . [t]o represent (someone) as an attorney; to act as legal counsel for someone who has been sued or prosecuted."[60]

The legal services forming the basis of Renda's malpractice claim do not fall within the *Hughes* paradigm. Renda may have had a debt claim against Marine, but even assuming Erikson was simultaneously advising both sides of that loan transaction,[61] the mere rendition of legal advice does not constitute "the prosecution or defense of a claim." If it were sufficient, those words—which we have repeated in every articulation of the rule—would serve no purpose in

---

[57] BLACK'S LAW DICTIONARY at 311 (11th ed. 2019).

[58] *Id.* at 1476.

[59] *Id.* at 528.

[60] *Id.*

[61] *See Stanfield v. Neubaum*, 494 S.W.3d 90, 96 (Tex. 2016) (to prevail on a legal-malpractice claim, a plaintiff must prove, among other things, that the attorney owed the plaintiff a duty of care).

17

defining the *Hughes* paradigm.  Here, the summary-judgment record establishes that Erikson took no action to either prosecute the debt claim for Renda or defend it on Marine's behalf.

In the *Marine* litigation, Erikson certainly was prosecuting and defending claims involving Marine.  But, Renda was not a party to the *Marine* litigation and the alleged malpractice in advising him either as a corporate officer or a personal creditor of Marine had nothing whatsoever to do with either prosecuting Marine's claims against the government or defending the government's claims against Marine.  The ongoing *Marine* litigation may have precipitated or even necessitated Marine's asset transfers (though the summary-judgment evidence does not demonstrate how), but the asset transfers neither advanced nor refuted any claims in that case.  And the *Marine* litigation judgment may have formed the basis for Renda's liability under the Priority Statute, but the advice Erikson provided was nonetheless distinct from the *Marine* litigation itself.

While our *Hughes* cases affirm that the alleged malpractice need not occur "in litigation," they simultaneously confirm that the alleged malpractice must be directly or integrally connected to carrying out some kind of legal action.  If we have not been entirely scrupulous in our language describing the relationship between the legal advice and prosecution or defense of a claim, we have at least been consistent in our application of the rule.  In each and every case we have applied *Hughes* tolling, the legal services providing the basis for the malpractice claim occurred directly in, and were integrally connected to, the prosecution or defense of a claim:

18

- drafting of an affidavit of voluntary relinquishment precedent to a termination suit and adoption proceeding;[62]

- allowing the statute of limitations to lapse after being retained to make a claim for asbestos-related personal injuries;[63]

- failing to provide sufficient notice when prosecuting a debt claim through a foreclosure sale;[64]

- trial counsel's mishandling of an insurance claim forcing a multi-million dollar settlement;[65]

- an attorney's conflict of interest in a wrongful-death and survival action and concomitant failure to add all tortfeasors to the lawsuit;[66]

- failing to timely file a limitation-of-liability pleading, leaving the client exposed to an excess judgment;[67] and

- attorney malpractice in a suit to recover on a note against the maker and guarantors.[68]

---

[62] *Hughes v. Mahaney & Higgins*, 821 S.W.2d 154, 155 (Tex. 1991); *see also* TEX. FAM. CODE § 161.001(b)(1)(K) (an affidavit of relinquishment of parental rights executed "before or after" a parental termination suit is filed is grounds for terminating the parent–child relationship).

[63] *Aduddell v. Parkhill*, 821 S.W.2d 158, 158-59 (Tex. 1991).

[64] *Gulf Coast Inv. Corp. v. Brown*, 821 S.W.2d 159, 160 (Tex. 1991); *see* TEX. PROP. CODE § 51.002 (prescribing the mandatory process for selling real property via non-judicial foreclosure sale under a power of sale conferred by a contract lien).

[65] *Am. Centennial Ins. Co. v. Canal Ins. Co.*, 843 S.W.2d 480, 418 (Tex. 1992).

[66] *Sanchez v. Hastings*, 898 S.W.2d 287, 287-88 (Tex. 1995).

[67] *Apex Towing Co. v. Tolin*, 41 S.W.3d 118, 119 (Tex. 2001).

[68] *Underkofler v. Vanasek*, 53 S.W.3d 343, 345 (Tex. 2001).

Unlike the legal services at issue in these cases, the legal advice Erikson provided—approving Marine's transfer of assets to creditors—was, at best, incidental to and tangentially related to the ongoing *Marine* litigation. Litigation can have many ripple effects; Renda's view of the *Hughes* tolling rule would expand its application well beyond what is reasonably justifiable for a judicial exception to the statute of limitations.

While some appeals courts have held *Hughes* does not apply to "transactional work" even when litigation ultimately ensues from the underlying legal services,[69] we view the "transactional work" exclusion as merely a shorthand way of saying *Hughes* tolling is limited to malpractice "in the prosecution or defense of a claim" whether occurring during litigation or not. Legal work only incidentally related to activities undertaken to prosecute or defend a claim is not encompassed within the *Hughes* paradigm. Such is the case here. Accordingly, *Hughes* tolling does not apply, and Renda's malpractice lawsuit was untimely.

---

[69] *See, e.g.*, *JC Project Mgmt. Servs. v. Kitchens*, No. 12-17-00130-CV, 2018 WL 3203437, at *3 (Tex. App.—Tyler June 29, 2018, pet. denied) (mem. op.); *CellTex Site Servs. v. Kreager Law Firm*, No. 04-12-00249-CV, 2012 WL 6720663, at *4 (Tex. App.—San Antonio Dec. 28, 2012, pet. denied) (mem. op.); *Isaacs v. Schleier*, 356 S.W.3d 548, 562 (Tex. App.—Texarkana 2011, pet. denied); *Brennan v. Manning*, No. 07-06-0041-CV, 2007 WL 1098476, at *2 (Tex. App.—Amarillo Apr.12, 2007, pet. denied) (mem. op.); *Murphy v. Mullin, Hoard & Brown, L.L.P.*, 168 S.W.3d 288, 292-93 (Tex. App.—Dallas 2005, no pet.); *Vacek Grp. v. Clark*, 95 S.W.3d 439, 444-47 (Tex. App.—Houston [1st Dist.] 2002, no pet.); *Burnap v. Linnartz*, 914 S.W.2d 142, 147-48 (Tex. App.—San Antonio 1995, writ denied).

## C. As Defined, *Hughes* Tolling Reflects a Balanced Approach

As a judicial exception to the statute of limitations, the *Hughes* tolling rule reflects a minority approach,[70] but we have determined that in its present form, the rule "appropriately balance[s] the competing concerns of the need to bar stale claims and avoid prejudice to defendants" while "preserving a reasonable opportunity for plaintiffs to pursue legitimate claims."[71] No compelling reason exists to extend it here and doing so would unfairly prejudice defendants. The broad construction and application of the rule Renda advocates would permit tolling of unlimited reach and duration without any requirement or assurance of notice to the attorney. This would upset the balance we intended and undermine the policy of repose underlying the statute of limitations.

Statutes of limitations are "not directed to the merits of any individual case, they are a result of legislative assessment of the merits of cases in general."[72] They "protect the courts and the public from the perils of adjudicating stale claims" and "afford comfort and repose to the defendant."[73] "Limitations statutes afford plaintiffs what the legislature deems a reasonable time to present their claims and protect defendants and the courts from having to deal with cases in which the search for

---

[70] *See Apex Towing*, 41 S.W.3d at 122 ("[T]he tolling rule we adopted is not universally followed."); *Hughes v. Mahaney & Higgins*, 821 S.W.2d 154, 157-58 n.5 (Tex. 1991) (comparing to approaches followed by other states); *see also Legal, accountant, and miscellaneous negligence or malpractice*, 1A American Law of Torts § 5:37, nn.26-27 (compiling cases); Wendy Cox Dvorak, *Idaho's Statute of Limitations and Accrual of Legal Malpractice Causes of Action: Sorry, but Your Case Was over Before It Began*, 31 Idaho L. Rev. 231, 258 & n.219 (1994) (listing *Hughes* as a minority position).

[71] *Apex Towing*, 41 S.W.3d at 122.

[72] *Robinson v. Weaver*, 550 S.W.2d 18, 20 (Tex. 1977).

[73] *Godoy v. Wells Fargo Bank, N.A.*, 575 S.W.3d 531, 538 (Tex. 2019).

truth may be seriously impaired by the loss of evidence, whether by death or disappearance of witnesses, fading memories, disappearance of documents or otherwise."[74]

Determining when a cause of action accrues is a judicial function.[75]  But to respect the legislative prerogative, judicial exceptions to limitations statutes cannot be undertaken lightly:

> The fact that a meritorious claim might thereby be rendered nonassertable is an unfortunate, occasional by-product of the operation of limitations.  All statutes of limitations provide some time period during which the cause of action is assertable.  However, preclusion of a legal remedy alone is not enough to justify a judicial exception to the statute.  The primary purpose of limitations, to prevent litigation of stale or fraudulent claims, must be kept in mind.[76]

Limitations can yield harsh consequences in some circumstances,[77] but this is not one of those cases.  Eleven years passed between the conversations Erikson had with Renda's accountant and the filing of the malpractice lawsuit.  Renda had the protection and benefit of the discovery rule for more than half that time, but waited an additional five years to charge Erikson with responsibility for the Priority Suit.  Even without equitable tolling, malpractice litigants in Renda's position have options to ensure their claims are not eliminated by the passage of time.  Tolling agreements provide advantages that make them attractive to both client and counsel, and as we have recognized in the accounting-malpractice context, abatement is also an adequate safeguard.[78]  Neither option is

---

[74] *Murray v. San Jacinto Agency, Inc.*, 800 S.W.2d 826, 828 (Tex. 1990).

[75] *Willis v. Maverick*, 760 S.W.2d 642, 644 (Tex. 1988).

[76] *Robinson*, 550 S.W.2d at 20.

[77] *Brown v. Shwarts*, 968 S.W.2d 331, 334 (Tex. 1998).

[78] *Murphy v. Campbell*, 964 S.W.2d 265, 273 (Tex. 1997) (maintaining competing tax and malpractice suits "would have required plaintiffs to take inconsistent positions," but that conflict could be avoided "by requesting the court to abate the malpractice case pending resolution of the tax suit").

guaranteed but both have the benefit of ensuring an attorney has timely notice of a legal-malpractice claim, so evidence may be preserved and the attorney afforded a fair opportunity to mount a defense. Extending *Hughes* tolling beyond its defined boundaries is thus unnecessary.

### III. Conclusion

Renda's malpractice claim undisputedly accrued more than two years before he sued Erikson. Because the legal advice Erikson provided regarding settlement of Marine's debts was only tangentially related to the prosecution or defense of a claim, it does not meet the criteria for *Hughes* tolling. We therefore reverse the court of appeals' judgment and render judgment that Renda take nothing on his malpractice claims.

_____
Eva M. Guzman
Justice

**OPINION DELIVERED:** December 20, 2019